IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHELSEA SCHMOTZER, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action<br>No. 15-6904(JBS/DEA) |
| RUTGERS UNIVERSITY-CAMDEN,<br>JEFFREY L. DEAN, individually<br>and in his capacity as<br>Athletic Director, Rutgers<br>Camden, and MATTHEW DEVER, | **OPINION** |
| Defendants. | |

APPEARANCES:

Jay L. Edelstein, Esq.
EDELSTEIN LAW LLP
230 South Broad Street
Suite 900
Philadelphia, PA 19102
    Attorney for Plaintiff

Ellis I. Medoway, Esq.
Tracy Asper Wolak, Esq.
ARCHER & GREINER, PC
One Centennial Square
Haddonfield, NJ 08033
    Attorneys for Defendant Rutgers University-Camden and
    Jeffrey L. Dean

Charles H. Nugent, Jr.
LAW OFFICE OF CHARLES H. NUGENT, JR.
South Crossing Office Condominiums
530 Lippincott Drive
Building E
Marlton, NJ 08053
    Attorney for Defendant Matthew Dever

**SIMANDLE, District Judge:**

# I. INTRODUCTION

In this action, Plaintiff Chelsea Schmotzer, a former member of the Rutgers University-Camden's women's volleyball team, alleges that she was coerced into a sexual relationship with her volleyball coach in 2010, and that the university acted with deliberate indifference to her claims of sexual assault and harassment. Plaintiff contends that she repressed memories of their relationship between 2011 and 2014, and that she only realized the extent of the sexual assault and harassment after a traumatic event triggered her memory.

This case comes before the Court on the motion for summary judgment by Defendant Rutgers University-Camden and Athletic Director Jeffrey Dean [Docket Item 14]. Defendants argue that even though discovery has not yet concluded in this case, the undisputed facts show that Plaintiff's claim is barred by the two-year statute of limitations. For the reasons that follow, the Court agrees that there is no evidence from which a reasonable fact finder could find or infer that Ms. Schmotzer's memory was repressed for a period of years necessary to render her claims timely under the discovery rule, and the Court will grant summary judgment in favor of Defendants Rutgers University-Camden and Jeffrey Dean.

Co-Defendant Matthew Dever belatedly attempted to join the pending summary judgment motion by filing a "me-too" letter

after the deadline for summary judgment motions and indeed after

Plaintiff's opposition to the pending summary judgment motion

was filed, and Plaintiff objected to Dever's attempted joinder.

Defendant Dever filed no separate summary judgment briefing or

L. Civ. R. 56.1 statement. The Court sustains Plaintiff's

objection, without prejudice to Dever's opportunity to file a

proper Rule 56 motion within 21 days.[1]

---

[1] The motion of Defendants Rutgers and Dean was timely filed
within the deadline of September 23, 2016 for statute of
limitations summary judgment motions. Plaintiff filed opposition
to that motion on October 3, 2016 [Docket Item 15]. Counsel for
Defendant Dever then submitted a one-page letter, requesting to
be permitted to join in the motion [Docket Item 17], stating
simply that "[t]he motion for summary judgment filed by Rutgers-
Camden accurately sets forth the facts and law, and applies
equally to Dever." Id. Plaintiff opposed Dever's request as
untimely, prejudicial and procedurally deficient. There is no
rule articulating the procedure for a party to adopt and join in
another party's motion, but that cannot mean that anything goes.
At a minimum, to be docketed as a motion, the "me-too" motion
should be submitted in the form of a motion, filed on the
docket, and contain a statement of the relief sought and a
statement that no brief is necessary and that no separate L.
Civ. R. 56.1 statement is necessary because the party joins in
those submissions filed by other counsel; second, the me-too
motion must be filed promptly after the motion it seeks to join,
so that opposing counsel has due notice and opportunity to
respond. Here, Dever did not meet these minimum requirements for
form and timeliness and his joinder will be denied. Dever will,
however, be permitted to file a proper Rule 56 motion within 21
days, to be determined in due course after Plaintiff's
opportunity to respond.

## II. BACKGROUND[2]

This dispute concerns the relationship between Plaintiff Chelsea Schmotzer and Matthew Dever, her volleyball coach, before and while Plaintiff was a student-athlete at Rutgers University-Camden.

Plaintiff attended Rutgers University-Camden from August 2010 until the spring semester of 2013, when she transferred to Rutgers University-New Brunswick. (Deposition of Chelsea Schmotzer ("Schmotzer Dep.") at 20:4-12.) Plaintiff played volleyball for her high school, for the East Coast Crush club volleyball team from November 2009 until May 2010, and for Rutgers-Camden from September 2010 until September 2011. (Id. at 23:22-26:24, 94:8-10.) Plaintiff and Defendant Dever met when he was Plaintiff's coach on the East Coast Crush club team. (Id. at 25:11-13.) Defendant Dever was also the assistant coach of the Rutgers-Camden women's volleyball team at the time. (Deposition of Matthew Dever ("Dever Dep.") at 28:18-21.) Plaintiff decided to play volleyball at Rutgers-Camden because of Defendant Dever. (Schmotzer Dep. at 26:19-29:12.)

---

[2] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff, as the party opposing summary judgment. The Court disregards, as it must, those portions of the parties' statements of material facts that lack citation to relevant record evidence, contain improper legal argument or conclusions, or recite irrelevant factual matter. See generally L. Civ. R. 56.1.

Plaintiff and Defendant Dever began a sexual relationship in or around April 2010, while Plaintiff was 18 years old and still a high school student playing on the East Coast Crush club team. (Dever Dep. at 105:25-106:107; Schmotzer Dep. at 73:21-22.) Their last sexual contact occurred in August or September 2010, but they continued to communicate regularly, including by email and text message, for a year while Plaintiff played on the Rutgers-Camden women's volleyball team. (Schmotzer Dep. at 187:17-189:10; Dever Dep. at 22:18-23:15; see generally emails and text messages from December 15, 2010 through September 15, 2011 [Exhibit 5 to Certification of Ellis I. Medoway ("Medoway Cert.")].) Although Plaintiff asserts that Defendant Dever continued to harass her for the next year after their sexual relationship ended by means of text messages and phone calls, she conceded that she did not consider these exchanges to be harassing and has not adduced any other evidence of harassing conduct after the sexual aspect of their relationship ended in September, 2010. (Schmotzer Dep. at 183:4-17, 197:9-13; see also Complaint [Docket Item 1] at ¶¶ 28-29, 51.)

Mat Ogin was the head coach of the Rutgers-Camden women's volleyball team when Plaintiff joined the team, but his tenure ended late in 2010 under suspicion that he was in a relationship with one of the players. (Dever Dep. at 67:16-21, 137:1-140:22; Schmotzer Dep. at 35:14-36:20; Deposition of Jeffrey Dean ("Dean

Dep.") at 39:5-43:12.) Plaintiff was "influential" in reporting Coach Ogin's relationship to the Rutgers administration. (Mary Beth Daisey Interview, OEE Investigation Report [Exhibit 15 to Medoway Cert.]; see also December 4, 2014 email from Chelsea Schmotzer to Erin M. Barney [Exhibit 7 to Medoway Cert.].) Defendant Dever was appointed as the interim head volleyball coach in February 2011 and elevated to head couch around June or July 2011. (Dever Dep. at 151:20-152:9, 155:18-24, 162:11-14; Schmotzer Dep. at 65:5-10; Dean Dep. at 45:4-7.)

Plaintiff quit the Rutgers-Camden volleyball team on September 15, 2011, at the beginning of her sophomore season, in an email to Defendant Dever and copying Jeffrey Dean, the Rutgers-Camden Athletic Director. (Schmotzer Dep. at 93:5-94:10; Dever Dep. at 175:3-176:3; Dean Dep. at 50:1-5; see also September 15, 2011 email [Exhibit 8 to Medoway Cert.]) Plaintiff wrote:

> I am unable to continue playing for the Rutgers Camden Volleyball Team. The climate has grown too uncomfortable and I can no longer participate in a program that is lead in a way I do not respect. It is sad to see the talent we possess not being used to its best ability and I can no longer deal with the stress this puts on me as well as my academics. I feel as though there was a lack of a professional relationship between yourself and players driving me to the point to request no more phone calls; a request you blatantly ignored. My heart is no longer in it and because of these reasons and I need to focus on school and elevating my GPA to transfer.

(September 15, 2011 email.)

Defendants Dever and Dean discussed Plaintiff's email at some point shortly thereafter, and Defendant Dean told the coach that "[if] [Plaintiff] doesn't want to play, leave her alone." (Dean Dep. at 50:10-22; Dever Dep. at 180:6-181:11.) Defendant Dean did not know Plaintiff at the time, and did not contact her after receiving the email because "I believe she had made her decision she did not want to play, and I didn't want to intrude on that decision." (Dean Dep. at 50:23-51:16.) Defendant Dean testified that did not reach out to Plaintiff or investigate her claims that "the climate has grown too uncomfortable" or that "there was a lack of a professional relationship between [Defendant Dever] and players" because "[n]othing indicated to me that there was anything improper going on." (Id. at 51:17-53:18.) Defendant Dever never disclosed the previous sexual nature of his relationship with Plaintiff to Defendant Dean or other Rutgers administrators. (Dean Dep. at 242:4-243:8, 245:1-7, 259:23-260:19.)

Plaintiff and Defendant Dever had no more contact after the September 15, 2011 email. (Schmotzer Dep. at 105:2-20; Dever Dep. at 169:18-170:1, 257:1-258:8.) Plaintiff and Defendant Dean corresponded only one additional time, in the winter of 2013, about Plaintiff's status as a student-athlete at Rutgers-Camden. (Schmotzer Dep. at 112:23-114:1; see also January 21, 2013 email [Exhibit 9 to Medoway Cert.].)

7

About one month after quitting the team, in October 2011, Plaintiff drove with a friend to Defendant Dever's house and confronted his wife about their relationship. (See Schmotzer Dep. at 107:7-112:11.) Plaintiff told Mrs. Dever that Defendant Dever "had taken advantage of me and I just really think you should know." (Id. at 109:18-23.) Their conversation lasted only minutes before Plaintiff drove away. (Id. at 110:19-23.) Plaintiff conceded that, at the time, she was "fully aware of the situation with" Defendant Dever. (Id. at 110:9-12.) In other words, there is no dispute that her memory of the misconduct and harm was intact as of October 2011. Plaintiff never told anyone at Rutgers about her meeting with Mrs. Dever. (Id. at 112:6-8.)

Plaintiff left Rutgers-Camden and transferred to the Rutgers-New Brunswick campus for the spring semester of 2013. (Schmotzer Dep. at 20:8-12.) It is at some point between her confrontation with Mrs. Dever and her transfer to the other campus that Plaintiff avers that she repressed the memories of the sexual assaults, although she cannot at this juncture say exactly when it occurred. (Compl.at ¶ 32; see also Plaintiff's Opposition Brief at 5, 9.) Plaintiff testified that she did not tell any Rutgers administrators about her relationship with Defendant Dever when she decided to transfer because "it wasn't my life, like I was completely disconnected from it," that she wanted to forget the relationship "and [she] did," and that she

"was completely in a fog." (Schmotzer Dep. at 77:9-79:5, 202:9-20.) She admitted at her deposition that she knew about her "situation" with Defendant Dever "to an extent" when she transferred, but that by leaving Camden and being "away from all of that" she was "able to become a different person." (Id. at 79:7-16.) She testified that, while she was enrolled in the New Brunswick campus, she "didn't actively want to remember" her relationship with Defendant Dever and that "on a subconscious level I knew about it, but I did not actively think about it." (Id. at 142:1-143:5.)

Plaintiff also decided to leave the Camden campus, at least in part, to be closer to her boyfriend at the time, who attended Rutgers-New Brunswick. (Schmotzer Dep. at 70:22-71:2.) Plaintiff was in a relationship with that boyfriend from about May 2010 until February 2014. (Id. at 68:10-22.) Plaintiff told her boyfriend about her relationship with Defendant Dever sometime in May 2011, while she was still a member of the Rutgers-Camden volleyball team. (Id. at 72:14-22.) Plaintiff testified that she and her boyfriend did not discuss her relationship with Defendant Dever again after she transferred, nor did she discuss it with any other friends. (Id. at 81:8-22.)

In or around April or May of 2014, Plaintiff was at a bar on the New Brunswick campus with friends when she ran into a former teammate from the Rutgers-Camden volleyball team who

called her by a nickname that Defendant Dever had given her. (Schmotzer Dep. at 126:2-8.) Plaintiff then "ran out of the bar and went to my friend's house and really just broke down for like six hours." (Id. at 127:8-10.) Plaintiff told one of her friends "about what was going on and why I was upset." (Id. at 130:6-13.) Plaintiff testified that "that night at the bar, I think everything, it just came back and it was very introspective." (Id. at 135:19-22.)

It is at this point that Plaintiff told Rutgers administrators about her relationship with Defendant Dever. In May 2014 Plaintiff met with Timothy Grimm, Dean of Students at Rutgers-New Brunswick, and told him "how . . . Matt had taken advantage of me and how I had recently just realized the impact that it had had on me, and I just needed help." (Schmotzer Dep. at 134:11-135:16.) Rutgers administrators followed up with Plaintiff after her disclosure to Dean Grimm and began to investigate Plaintiffs' claim; Plaintiff thereafter was contacted by, and corresponded with, Jackie Moran, Title IX Coordinator at Rutgers-New Brunswick, and Jennifer Hellstern of the Rutgers Office of Employment Equity ("OEE"). (Id. at 145:8-146:14, 152:2-154:13, 158:10-159:15; see also July 1, 2014 Letter from Jackie Moran and Rutgers Policy Prohibiting Discrimination and Harassment [Exhibit 10 to Medoway Cert.]; July 2014 email from Jackie Moran to Lisa Grosskreutz and

Jennifer Hellstern [Exhibit 11 to Medoway Cert.]; July 7, 2014
email from Jackie Moran to Chelsea Schmotzer [Exhibit 12 to
Medoway Cert.].) Plaintiff was also contacted by the Rutgers
Police, who "described the process that they were going through
and [her] options," although she elected not to "follow up" with
either the New Brunswick or Camden Rutgers police departments.
(Schmotzer Dep. at 154:14-158:9.) At this time, Plaintiff
engaged legal counsel. (See July 31, August 7, August 8, and
September 26, 2014 Letters from Edelstein Law, LLP to Rutgers
[Exhibit 13 to Medoway Cert.].)

Plaintiff also gave a statement to the Camden County
Prosecutor's Office on August 12, 2014 regarding her
relationship with Defendant Dever. (Schmotzer Dep. 148:2-150:17;
see also Prosecutor's Office File [Exhibit 18 to Medoway
Cert.].) Defendant Dever was never charged with a criminal
violation. (Schmotzer Dep. at 149:13-23.)

A representative from the OEE contacted Defendant Dever on
August 18, 2014 to inform him that her office had filed "a
formal complaint charging you under the university's Policy
Prohibiting Discrimination and Harassment with sexually
harassing an RU student." (Email string between Lisa
Grosskreutz, Matt Dever, Jennifer Hellstern, and Marie Ann
Arcuri [Exhibit 15 to Medoway Cert.].) Defendant Dever did not
participate in the OEE investigation, aside from sending a

single email in response to the message informing him of the formal complaint. (Dever Dep. at 217:1–218:5.) The OEE concluded in November 2014 that Defendant Dever had violated the University's Policy Prohibiting Discrimination and Harassment. (OEE Investigation Report [Exhibit 15 to Medoway Cert.]; see also Dever Dep. at 218:6–12.) Defendant Dever's contract as head coach of the Rutgers-Camden women's volleyball team expired during the OEE investigation and Defendant Dean elected not to renew it in advance of the fall 2014 volleyball season. (Dever Dep. at 218:13–22, 264:3–267:18.) Defendant Dever has not worked for Rutgers since. (Id. at 267:13–18.)

Plaintiff filed a four-count Complaint against Rutgers University-Camden, Jeffrey Dean, and Matthew Dever on September 16, 2015, alleging violations of Title IX, 20 U.S.C. § 1681 et seq., 42 U.S.C. § 1983, and Monell liability for failure to train, and seeking punitive damages for reckless and/or intentional conduct. [Docket Item 1.] Defendants Rutgers and Jeffrey Dean filed the instant motion for summary judgment [Docket Item 14] before the close of fact discovery. [See Scheduling Order, Docket Item 9.] Magistrate Judge Douglas Arpert stayed all further discovery until this motion is resolved, over Plaintiff's objections; Plaintiff still seeks to take additional fact depositions in order to provide her experts on memory repression a complete record for their reports.

[Docket Item 13.] The motion for summary judgment is now fully briefed,[3] and the Court will decide it without oral argument pursuant to Fed. R. Civ. P. 78.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, fail to preclude the entry of summary judgment. Id. Conclusory, self-serving submissions cannot alone withstand a motion for summary judgment. Gonzalez v. Sec'y of Dept. of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (internal citations omitted).

In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and must provide that party the benefit of all reasonable

---

[3] Plaintiff filed a sur-reply brief [Docket Items 21, 22 & 23] without seeking leave of Court, as required by L. Civ. R. 7.1(6). Nevertheless, for good cause shown, the Court has also considered Plaintiff's sur-reply.

inferences.  Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).  However, any such inferences "must flow directly from admissible evidence [,]" because "'an inference based upon [] speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'"  Halsey, 750 F.3d at 287 (quoting Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d Cir. 1990); citing Anderson, 477 U.S. at 255).

Regarding the ripeness of a summary judgment motion, an opposing party taking the position that discovery is incomplete and seeking to dismiss or defer the motion until having an opportunity for further discovery must file an affidavit or declaration under Rule 56(d), Fed. R. Civ. P.,[4] which specifies the reasons why it cannot present facts essential to justify its opposition. Plaintiff has opposed this statute of limitations motion, responding in detail to the movants' brief and Local Civil Rule 56.1 Statement of Undisputed Material Facts, as well as submitting her own factual materials. Despite this, Plaintiff

---

[4] Rule 56(d), Fed R. Civ. P., states:
 When Facts Are Unavailable to the Nonmovant.
 If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
  (1)  defer considering the motion or deny it;
  (2)  allow time to obtain affidavits or declarations or to take discovery; or
  (3)  issue any other appropriate order.

avers in Pl. Opp. Br. at 1 that "Plaintiff intends to submit expert reports to support her own testimony that her injuries were repressed until April/May of 2014," and that she "has not yet had the chance to have her experts opine as to when the injuries manifested themselves." Id. Magistrate Judge Arpert, after considering Plaintiff's request to extend the September 30, 2016 discovery deadline and Defendants' request to file a dispositive motion addressing their statute of limitations defense, denied the enlargement of discovery in his Order of September 8, 2016 [Docket Item 11]. That Order also provided that Plaintiff's expert reports remained due on September 30, 2016. Id.

Although Plaintiff's opposition was not submitted until October 3, 2016 [Docket Item 16], beyond the date when Plaintiff's expert report, if any, on this issue was due, Plaintiff referenced no such expert opinion testimony and no explanation why Plaintiff did not have ample opportunity to obtain such an opinion based on the factual information she was in the best position to provide.

Moreover, if Plaintiff takes the position that this motion was premature, despite a period of nine months of factual discovery through September 30th, which is unexplained, her recourse would have been to file a Rule 56(d) certification or affidavit. Where no Rule 56(d) affidavit is filed identifying

15

"the information sought, how it would help [her] case, or why it
had not already been obtained," a court is well within its
discretion to proceed on the existing facts. Couden v. Duffy,
446 F.2d 483, 500 n. 12 (3d Cir. 2006) (applying identical
predecessor to Rule 56(d) in former Rule 56(f)). It is a
longstanding rule that a party opposing summary judgment by
indicating its need for additional discovery must file a Rule
56(d) affidavit that indicates "what material facts it hopes to
uncover and why it has not previously discovered the
information." Radich v. Goode, 866 F.2d 1391, 1393-94 (3d Cir.
1989) (citing Hancock Indus.v. Schaeffer, 811 F.2d 225 (3d Cir.
1987) and Koplove v. Ford Motor Co., 796 F.2d 15 (3d Cir.
1986)).

Even if the Court were to disregard Plaintiff's procedural
default in failing to comply with Rule 56(d), and despite the
Third Circuit's admonition that "[a]n unsworn memorandum
opposing a party's motion for summary judgment is not an
affidavit," Radich, 886 F.2d at 1394, Plaintiff has identified
no information relevant to the statute of limitations issue,
including her repressed memory or repressed injury recognition,
that would somehow be in the possession of the defendants and
unavailable to her without further discovery.

In any event, as Judge Arpert determined and the present
record bears out, the present motion for summary judgment upon

statute of limitations grounds is not premature and will not be deferred for further, unidentified discovery.

## IV. DISCUSSION

Defendants seek summary judgment on the grounds that the Complaint is barred by the applicable statute of limitations. Plaintiff principally argues in opposition that the limitations period was tolled until May of 2014[5] because of Plaintiff's repressed memories of the sexual assault and harassment. For the reasons that follow, the Court finds that Plaintiff's claims are time-barred and grants summary judgment in favor of all Defendants.

It is undisputed that Plaintiff's claims under Title IX, Section 1983, and <u>Monell</u> are subject to a two-year statute of limitations. <u>Bougher v. University of Pittsburgh</u>, 882 F.2d 74, 78 (3d Cir. 1989) (local statute of limitations for personal injury claims applies to Title IX claims); <u>Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985) (same, § 1983 actions); <u>Bartholomew v. Fischl</u>, 782 F.2d 1148, 1149 (3d Cir. 1986) (same, <u>Monell</u> claims); N.J.S.A. § 2A:14-2 (limitations period is two years). In general, a cause of action accrues, and the limitations

---

[5] Plaintiff was unsure whether her former teammate used Defendant Dever's old nickname for her in April or May, 2014. (Schmotzer Dep. at 131:25-132:2.) For the purposes of this motion, the Court grants Plaintiff the favorable inference that the later date is applicable.

period begins to run, "when the plaintiff knew or should have known of the injury upon which the action is based." <u>Montanez v. Sec'y Pa. Dep't of Corr.</u>, 773 F.3d 472, 480 (3d Cir. 2014) (citing <u>Kach v. Hose</u>, 589 F.3d 626, 634 (3d Cir. 2009)). Defendants maintain that Plaintiff's cause of action accrued at the time of her injury, i.e. when Defendant Dever coerced Plaintiff into a sexual relationship (it is undisputed that the last sexual contact occurred, at the latest, in September 2010), that Plaintiff was aware of her injury and Dever's sexual misconduct causing it before, at the latest, September of 2011, and that accordingly, her September 2015 Complaint was filed at least two years out of time.

Plaintiff claims that she is entitled to the benefit of the discovery rule, on the grounds that she repressed memories of the sexual harassment until May 2014, and that accordingly her September 2015 Complaint was timely filed less than two years after she "awoke" to her memories of abuse. The discovery rule provides "that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." <u>Lopez v. Swyer</u>, 300 A.2d 563, 565 (N.J. 1973). It applies (1) where a "victim is either unaware that he has been injured" or (2) "although aware of an injury, does not know that a third

party is responsible." <u>Maher v. County of Mercer</u>, 894 A.2d 100, 103 (N.J. App. Div. 2006). Whether the discovery rule applies is a matter for the trial court to decide, taking into account "the equitable nature of the issue before him." <u>Lopez</u>, 300 A.2d at 567.

It is undisputed that Plaintiff was still aware of her victimization by harassment and her injury from it when she complained to Mrs. Dever in October 2011. Even if the Court credits Plaintiff's assertion that she completely repressed[6] all memories of her relationship with Defendant Dever between October 2011 and May 2014 (from the moment she left the confrontation with Mrs. Dever, the earliest time according to the record when she could have repressed memories, until a former teammate used Defendant Dever's old nickname for her at a bar in New Brunswick, in May 2014, the latest time according to the record she could have "awoken"), Plaintiff cannot overcome her undisputed testimony that she was "fully aware of the situation with" Defendant Dever from September 2010, when they

---

[6] As Defendants point out, Plaintiff never actually testified under oath that she "repressed" all memories of her relationship with Defendant Dever. Instead, Plaintiff used phrases like "completely disconnected from it," "didn't actively want to remember," or "I did not actively think about it" to describe her mental state with respect to the harassment between 2013, when she transferred to the New Brunswick campus, and 2014, when she "awoke" to the memories. (Schmotzer Dep. at 77:9-79:5, 79:7-16, 142:1-143:5, 202:9-20.)

ended their sexual relationship, up until at least the time she confronted his wife, 13 months later, in October 2011. (See Schmotzer Dep. at 110:9-12.) By Plaintiff's own account, her cause of action accrued in 2010 when she "knew . . . of the injury upon which the action is based." Montanez, 773 F.3d at 480. The statute of limitations expired, at the latest, two years after the last sexual encounter, or in September 2012.[7]

The equitable policy underlying New Jersey's discovery rule would not be offended by a determination that Plaintiff's limitations period began to run when she and Defendant Dever last engaged in a sexual relationship, because Plaintiff's own testimony establishes that she was aware of what was happening at the time and for an extended period afterward, at least past her denunciation of Dever to his wife in October, 2011. It is well-established that

> [t]he purpose [of the discovery rule] is to ensure that a party is not barred from pursuing an action before he

---

[7] Although Plaintiff continues to assert in her briefs that she was harassed by Defendant Dever over email, text message, and phone calls until September 2011, Plaintiff has adduced no evidence of such harassing contact such that the statute of limitations could start later under the continuing violations doctrine. Plaintiff cannot rely only on the allegations in her pleadings and on mere speculation to withstand summary judgment. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As noted above, Plaintiff's own testimony confirms that she did not consider Dever's post-September, 2010 text messages and phone calls to be harassing in nature, see Part II, supra.

> or she has a reasonable basis for believing he or she
> actually has a claim. <u>Once the party has a reasonable
> basis for believing he or she has a claim, the
> justification for the discovery rule ceases.</u> There is no
> equitable reason to toll the statute of limitations for
> a party who reasonably should know that a claim exists.

<u>Prudential Ins. Co. of Amer. v. U.S. Gypsum Co.</u>, 828 F Supp. 287, 298 (D.N.J. 1993) (emphasis added). Likewise, courts recognize that the equities of the discovery rule must be balanced against the policies underlying statutes of limitation and repose, because "it may also be unjust . . . to compel a person to defend a law suit long after the alleged injury has occurred, when memories have faded." <u>Lopez</u>, 300 A.2d at 566. Whether Plaintiff knew that Defendant Dever's alleged conduct amounted to actionable sexual abuse or harassment in 2010 is of no import; rather, fairness to all parties requires that the operation of the discovery rule depends on when a potential claimant "knows or should know the facts underlying her injury and fault, and not necessarily when she learns the legal effect of those facts." <u>Grunwald v. Bronkesh</u>, 621 A.2d 459, 463 (N.J. 1993).

Plaintiff relies on <u>J.L. v. J.F.</u>, 722 A.2d 558 (N.J. App. Div. 1999) to support her position that the limitations period did not begin to run on her claims until she "both discover[ed] her repressed memories of the sexual assault and realize[d] the injurious effect it had on her" (Pl. Opp. Br. at 6), but that

case is distinguishable because it specifically concerns the
Child Sexual Abuse Act ("CSAA"), N.J.S.A. 2A:61B-1, et seq. The
CSAA provides special protections against the statute of
limitations to plaintiffs who were under the age of 18 years at
the time of their sexual abuse. N.J.S.A. 2A:61B-1(a)(1). That
statute provides that a cause of action for sexual abuse,
defined as "an act of sexual contact or sexual penetration
between a child under the age of 18 years and an adult," accrues
"at the time of reasonable discovery of the injury and its
causal relationship to the act of sexual abuse." N.J.S.A.
2A:61B-1(a)(1) & (b). In addition, the CSAA provides that the
statute of limitations may be further tolled "because of the
plaintiff's mental state, duress by the defendant, or any other
equitable grounds." N.J.S.A. 2A:61B-1(c). The New Jersey
legislature passed the CSAA in recognition of "the unique
nature" of childhood sexual abuse. J.L., 722 A.2d 564.

Because Plaintiff was 18 years old at the time of her
relationship with Defendant Dever, she cannot claim the special
procedural protections of Section 2A:61B-1(b) of the CSAA which
the Appellate Division discussed in J.L.[8] Rather, Plaintiff's

---

[8] Plaintiff's attempt to claim the protection of the CSAA because
"she had just turned 18 years old a few months prior to the
assaults" is unavailing. (Pl. Sur-Reply Br. [Docket Item 22] at
5.) The Court will not extend New Jersey law to apply the CSAA
to a victim over the age of majority who is not incompetent or
otherwise severely intellectually impaired. The federal courts

claims are subject to the ordinary two-year statute of
limitations for personal injury claims, N.J.S.A. 2A:14-2, which
does not specify, like the CSAA, that a cause of action does not
accrue until a plaintiff reasonably discovers both the injury
and its causal relationship to the abuse, or that the
limitations period can be tolled "because of the plaintiff's
mental state." Plaintiff's attempt in her sur-reply brief to
cast her discussion of the "reasonable discovery" standard of
the CSAA as akin to the discovery rule of Lopez is unconvincing.
Plaintiff is essentially asking the Court to merge two lines of
doctrine and graft additional requirements onto the ordinary
operation of the discovery rule, a step the Court will not take.
In short, the statute of limitations on Plaintiff's claim began
to run in 2010, when she was reasonably aware of her injury and
its cause, N.J.S.A. 2A:14-2, not in 2014 when she had allegedly
regained "conscious memory of the sexual abuse" and its
connection to any "serious psychological and mental illness
injury." J.L., 722 A.3d at 566.

Moreover, even if the Court assumes that the limitations
period could be tolled from October 2011 (when Plaintiff
confronted Mrs. Dever but – assumed for the sake of argument –

---

"may not expand state law without a clear indication that the
[state] Supreme Court would do the same." City of Phila. v. Lead
Indus. Assoc., Inc., 994 F.2d 112, 115 (3d Cir. 1993).

immediately and fully repressed the whole abuse) until May 2014
(when Plaintiff regained her memory in the nickname conversation
with her old teammate), and even if the Court assumes that an
admissible expert could establish that Plaintiff's memories were
"completely repressed" during that time period such that she was
no longer conscious of the improper sexual conduct of Dever and
its cause of her distress, it is undisputed that 16 more months
elapsed between when Plaintiff "awoke" to the realities of her
memories and when she filed this Complaint. Accordingly,
Plaintiff's own statements and conduct in the record before the
Court establishes that there were at least 29 months[9] unimpaired
by memory suppression in which Plaintiff knew of her injury
before she filed suit, where New Jersey affords her only two
years to bring her claim. Although it is an unusual case where
credibility is not an issue in determining whether a statute of
limitations should be tolled, the Court here need not reopen
discovery and allow for expert discovery and a <u>Lopez</u> hearing to
inquire into Plaintiff's state of mind and whether she was aware
of her injury between 2011 and 2014 because no expert could
overcome this time barrier based upon the facts and chronology
most favorable to Plaintiff's position. Plaintiff's claim

---

[9] Or, from September 2010 (last sexual encounter) until October
2011 (confrontation with Mrs. Dever) and from May 2014 (nickname
incident) until September 2015 (federal court complaint filed).

accrued in September 2010, and whether the two-year statute of limitations ran continuously or was interrupted by a period of repressed memories, the limitations period had expired prior to September 2015, when Plaintiff filed this delayed case.

## V.    CONCLUSION

An accompanying Order will be entered.


**June 21, 2017**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge